# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00257-CR

**Michael Anthony Deleon, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-293, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

### O P I N I O N

A jury found appellant Michael Anthony Deleon guilty of failing to appear in accordance with the terms of his release in a felony case and assessed punishment at nine years' imprisonment and a $5000 fine. *See* Tex. Penal Code Ann. § 38.10 (West 2003). Appellant brings forward two grounds for relief, one of which is that the trial court improperly commented on the weight of the evidence in its jury charge. We sustain this contention and reverse the judgment of conviction.

On December 8, 2007, appellant was released from custody on a $3500 bail bond following his arrest for felony assault. We quote the pertinent provisions of the bond as they appear in the record (italics indicates handwriting):

> THE CONDITION OF THIS BOND is that the above named principal stands
> charged with the offense of *Assault Bodily Injury Family Violence enhanced Felony*

*III*, a (misdemeanor) (felony) offense, and the aforesaid principal was required to give bail in the above stated amount to secure his release from custody and is entering into this obligation bind him to appear before the [County Court at Law] [District] Court of Hays County, City of San Marcos, Texas.

"I swear that I will appear before the [County Court at Law] [District] Court of Hays County, City of San Marcos, Texas on the _____ day of ___*To Be Set*___, A.D. 20__, at ___ a.m. and further I shall make my personal appearance on any subsequent date before said court as well as before any other court to which the same may be transferred for any and all subsequent proceedings . . . . "

Now therefore, if said principal shall well and truly make his personal appearance instanter before said court and further shall well and truly make his personal appearance before said court . . . and there remain from day to day and from term to term of said court, until discharged by course of law . . . this obligation shall become void; otherwise to remain in full force and effect.

Appellant's case was set for arraignment in the 22nd District Court of Hays County on March 27, 2008. The court administrator sent a written notice of the setting both to appellant, at the address shown on the bond, and to appellant's bondsman.[1] After receiving this notice from the court, the bondsman sent his own written notice to appellant, and he also tried unsuccessfully to contact appellant by telephone. Appellant did not appear on March 27.

The address and phone number on the bond belonged to appellant's grandmother, who signed a $3500 promissory note to the bondsman to secure the bond. As part of his agreement with the bondsman, appellant was to contact the bondsman's office weekly and notify him of any change of address. The bondsman testified that on at least two occasions in January and February 2008, a person in his office left a telephone message for appellant after appellant failed to check in. The bondsman also testified to his unsuccessful efforts to locate appellant after he failed

---

[1] The court administrator testified that there was no notice to defense counsel because appellant did not have counsel of record at that time.

to appear, which included hiring a private investigator. The bondsman testified that he understood that appellant was eventually arrested in another state, but the bondsman did not know when the arrest was made. The bail jumping indictment was filed on May 15, 2008.

The only State witnesses were the bondsman, court administrator, and court bailiff. The defense called no witnesses.

In his second ground for relief, appellant contends that the trial court erred by including the following instructions in its charge to the jury:

> You are further instructed that, if you find and believe from the evidence beyond a reasonable doubt that the defendant was free under an instanter bond, then you may find from such evidence, although you are not required to so find, that the defendant had notice to appear at the proceeding in question.
>
> The bond which has been admitted into evidence in this case is an instanter bond.
>
> If there is evidence before you that the defendant did not in fact have notice to appear at the proceeding in question, then the State may not rely upon the above-defined legal presumption unless the State has established beyond a reasonable doubt that either the defendant had notice in fact or that the defendant engaged in a course of conduct designed to prevent his receiving notice.[2]

---

[2] This instruction immediately preceded the application paragraph, which instructed the jurors:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that [appellant] on or about the 27th day of March, 2008, . . . after having been released from custody on a pending felony charge on condition that he subsequently appear in court, did then and there knowingly or intentionally fail to appear in the 22nd Judicial District Court of Hays County in accordance with the terms of his release to answer the felony [assault] charge pending against him . . . you will find the defendant guilty of the offense of Bail Jumping/Failure to Appear . . . but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant.

3

Appellant asserts that these instructions were improper because (1) the bond was not an instanter bond and (2) even if it were, the instruction was a comment on the weight of the evidence. Appellant makes these contentions for the first time on appeal, having voiced no objection to the charge in the trial court.

The bond stated that appellant "shall well and truly make his personal appearance instanter" and remain until discharged. Whatever else may be said about the bond, the trial court did not err by describing it as an instanter bond. *See Euziere v. State*, 648 S.W.2d 700, 702 (Tex. Crim. App. 1983). We agree with appellant, however, that the trial court erred by instructing the jury regarding the evidentiary consequences of appellant's release on an instanter bond.

As a general rule, a trial court must not express any opinion as to the weight of the evidence in its charge to the jury. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). One of the limited circumstances in which it is permissible for a court to single out a particular item of evidence is when a statute specifically identifies the evidence as a predicate fact from which a jury may presume the existence of an ultimate or elemental fact. *Bartlett v. State*, 270 S.W.3d 147, 151 (Tex. Crim. App. 2008). But Texas courts are forbidden from instructing a jury on any presumption or evidentiary sufficiency rule that does not have a statutory basis. *Brown v. State*, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003).

The challenged instructions appear to have been based on appellate opinions discussing the State's burden of proof in prosecutions for failure to appear. *See e.g.*, *Fish v. State*, 734 S.W.2d 741, 743 (Tex. App.—Dallas 1987, pet. ref'd); *Richardson v. State*, 699 S.W.2d 235,

4

238 (Tex. App.—Austin 1985, pet. ref'd).[3]  The evidentiary sufficiency rules and presumptions discussed in opinions such as *Richardson* and *Fish* are nonstatutory vehicles employed by appellate courts to review the sufficiency of the evidence.  Although it is proper for such rules or presumptions to be employed on appeal, it is an improper comment on the weight of the evidence for a trial court to include them in its charge to the jury.  *See Brown*, 122 S.W.3d at 801 (holding it was error to instruct jury that intent or knowledge may be inferred by acts done or words spoken); *Browning v. State*, 720 S.W.2d 504, 507 (Tex. Crim. App. 1986) (holding it was error to instruct jury that breaking and entering at nighttime raises presumption of intent to commit theft); *Mercado v. State*, 718 S.W.2d 291, 293 (Tex. Crim. App. 1986) (holding it was error to instruct jury that intent to kill may be inferred from use of deadly weapon).

Because appellant did not object to the instructions in the trial court, reversible error is presented only if the error was so egregiously harmful under the circumstances as to have denied appellant a fair and impartial trial.  *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).  Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right,

---

[3]  In *Richardson*, this Court explained that in order to prove that the defendant intentionally or knowingly failed to appear in court, there must be evidence that he had notice of the proceeding. 699 S.W.2d 235, 238 (Tex. App.—Austin 1985, pet. ref'd).  Proof that the defendant was free pursuant to an instanter bond constitutes a prima facie showing that he had notice of the proceeding and will satisfy the State's burden of proving the culpable mental state in the absence of evidence to the contrary.  *Id.*  But if there is evidence that the defendant did not, in fact, have notice of the proceeding, the State must offer evidence that the defendant either had actual notice or engaged in a course of conduct designed to prevent him from receiving notice.  *Id.*  In *Fish*, the Dallas court held that if an instanter bond does not name the court in which the defendant is to appear, it is not sufficient to prove a prima facie case that the defendant had notice of the place of the hearing. 734 S.W.2d 741, 743 (Tex. App.—Dallas 1987, pet. ref'd).

or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). To determine if charge error was egregiously harmful, we examine the record as a whole, including the remainder of the charge, the evidence, including the contested issues and weight of the probative evidence, and the arguments of counsel. *Id.*

Appellant's defense rested on the fact that the bail bond did not specify either the court in which appellant was to appear or the date and time on which he was to do so. During jury argument, defense counsel argued, "If you look at the bond, there was no designation of any particular court, there's no date, there's no time. And later on he was never notified, at least in person, of when he was supposed to show up in court." Thus, the defense urged that the State had failed to prove that appellant's failure to appear for his arraignment was intentional or knowing.

The State responded by stressing the circumstances. During their arguments, the prosecutors noted that a written notice of the setting had been sent to appellant by both the court administrator and the bail bondsman at the address shown on the bond, and that these notices had not been returned undelivered. They also observed that the address in question was the residence of appellant's grandmother, who had given the bondsman a promissory note and thus had a financial interest in seeing that appellant received the notice. One of the prosecutors drew attention to the erroneous instruction regarding evidentiary presumptions by reminding the jurors, "Paragraph 4 tells you that under the law there is a presumption that if this defendant is released on bond, that he had notice of this hearing on March 27th, 2008, the one in question, his arraignment hearing."

The erroneous instructions directly related to the only contested issue of fact at appellant's trial. The court told the jurors that the bond on which appellant had been released was an instanter bond. The court further instructed the jurors that because appellant was released on an

6

instanter bond, they were permitted to presume that appellant had notice to appear at his arraignment. In effect, the court instructed the jurors that there was sufficient evidence on which to base a finding that appellant had notice to appear, and thus to infer that his failure to appear was intentional or knowing. Because there was no other contested issue, the court's instruction effectively told the jury that there was sufficient evidence to convict appellant for failing to appear.

It is true that the court also instructed the jurors that "[i]f there [was] evidence" that appellant did not in fact have notice to appear, the State was bound to prove either that appellant did have notice in fact or engaged in a course of conduct designed to avoid receiving notice. It has been held that the failure of a bond to specify the court in which the defendant was to appear raises an issue as to whether he had notice of the proceeding, *Fish*, 734 S.W.2d at 743, but the jury was not told this. Because appellant's defense rested largely on the bond's failure to specify the time and place he was to appear, and having been instructed by the trial court that the bond was sufficient to support a presumption of notice, it is probable that the jurors understood the court's instructions as a whole to be that they could properly reject appellant's defense and presume that appellant had received notice of the proceeding.

We hold that the trial court erroneously commented on the weight of the evidence in its charge and, by doing so, effectively instructed the jury that there was sufficient evidence to convict appellant. Because this error vitally affected appellant's defense, it denied him a fair and impartial trial. Appellant's second ground for relief is sustained. Under the circumstances, we need not address appellant's first ground for relief.

The judgment of conviction is reversed and the cause is remanded for a new trial.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Reversed and Remanded

Filed:   September 1, 2011

Publish