

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00186-CR
_____

**KENT ALEXANDER JENKINS, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 52nd District Court
Coryell County, Texas
Trial Court No. 17-24039; Honorable T.D. Farrell, Presiding

February 6, 2020

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Following a plea of not guilty, Appellant, Kent Alexander Jenkins, was convicted by a jury of bail jumping and failure to appear, a third degree felony,[1] enhanced by a prior

---

[1] TEX. PENAL CODE ANN. § 38.10(a) (West 2017). The underlying offense for which Appellant's appearance was required was the felony offense of assault family violence. *Id.* at § 22.01(a), (b)(2)(B). As charged, the bail jumping offense was punishable as a third degree felony. *Id.* at § 38.10(f).

felony conviction.[2]  Punishment was assessed by the jury at ten years confinement, half of the maximum allowed by statute.  Appellant timely filed a notice of appeal.[3]  In presenting this appeal, counsel has filed an *Anders*[4] brief in support of a motion to withdraw.  We affirm and grant counsel's motion to withdraw.

In support of his motion to withdraw, counsel certifies he has conducted a conscientious examination of the record, and in his opinion, it reflects no potentially plausible basis for reversal of Appellant's conviction.  *Anders v. California*, 386 U.S. 738, 744-45, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *In re Schulman*, 252 S.W.3d 403, 406 (Tex. Crim. App. 2008).  Counsel candidly discusses why, under the controlling authorities, the record supports that conclusion.  *See High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978).  Counsel has demonstrated that he has complied with the requirements of *Anders* and *In re Schulman* by (1) providing a copy of the brief to Appellant, (2) notifying him of the right to file a *pro se* response if he desired to do so, and (3) informing him of the right to file a *pro se* petition for discretionary review.  *In re*

---

[2] TEX. PENAL CODE ANN. § 12.42(a) (West 2019).  An offense "punished as" a higher offense raises the level of punishment, not the degree of the offense.  *See Oliva v. State*, 548 S.W.3d 518, 526-27 (Tex. Crim. App. 2018).  In the underlying case, the punishment charge correctly instructed the jury that it could impose a sentence between two to twenty years, the punishment prescribed for a second degree felony.  *Id.* at § 12.33.

[3] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

[4] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

*Schulman*, 252 S.W.3d at 408.[5] By letter, this court granted Appellant an opportunity to exercise his right to file a response to counsel's brief, should he be so inclined. *Id.* at 409 n.23. Appellant filed two separate responses raising essentially identical complaints challenging his conviction by asserting violations of his constitutional rights and detailing various instances of what he considers to be ineffective representation. The State did not favor us with a brief.

### BACKGROUND

On January 16, 2016, Appellant was charged with intentionally, knowingly, or recklessly causing bodily injury to a member of his family or household by impeding her breathing or circulation of the blood by applying pressure to her throat or neck or by blocking her nose or mouth, a third degree felony. TEX. PENAL CODE ANN. § 22.01(a), (b)(2)(B) (West Supp. 2019). Two days later, he executed a $10,000 bond with Chapman Bail Bonds to secure his release. No defense attorney was listed on the bond. The terms of the bond required Appellant to "make his appearance before said Court . . . until discharged by due course of law, then and there to answer said accusation against him and shall appear before any court or magistrate before whom the cause may hereafter be pending at any time when and place where his presence may be required . . . ." The

---

[5] Notwithstanding that Appellant was informed of his right to file a *pro se* petition for discretionary review upon execution of the *Trial Court's Certification of Defendant's Right of Appeal*, counsel must comply with Rule 48.4 of the Texas Rules of Appellate Procedure which provides that counsel shall within five days *after* this opinion is handed down, send Appellant a copy of the opinion and judgment together with notification of his right to file a *pro se* petition for discretionary review. *In re Schulman*, 252 S.W.3d at 408 n.22, 411 n.35. The duty to send the client a copy of this court's decision is an informational one, not a representational one. It is ministerial in nature, does not involve legal advice, and exists after the court of appeals has granted counsel's motion to withdraw. *Id.* at 411 n.33.

date to appear was left blank as there were no settings scheduled at the time. Appellant signed the bond and provided an address, a home belonging to his grandparents, and a telephone number. Appellant also signed a *Bond Agreement* acknowledging the rules between himself and Chapman Bail Bonds. Some of those rules required Appellant to call his bond representative every Monday, notify the representative if he employed counsel, and immediately report any changes in his address, telephone number, or employment.[6]

Appellant's arraignment was scheduled for March 21, 2016, at 9:00 a.m. When the case was called, Appellant failed to appear. The bailiff called his name out three times in the hallways of the Coryell County Courthouse, but Appellant did not respond. Appellant was eventually located in Travis County, Texas, and arrested for bail jumping and failure to appear.

### APPLICABLE LAW

A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release. TEX. PENAL CODE ANN. § 38.10(a) (West 2017). Bail jumping is a result-of-conduct offense. *Walker v. State*, 291 S.W.3d 114, 117 (Tex. App.—Texarkana 2009, no pet.) (citing *Roberts v. State*, 273 S.W.3d 322, 328-29 (Tex. Crim. App. 2008)). Thus, the culpable mental state cannot be shown "absent proof

---

[6] The testimony established that Appellant did not always call his bond representative as scheduled but he did report a change in his telephone number. He did not advise his representative when he retained counsel.

4

the defendant had notice of the proceeding at which he failed to appear." *Tucker v. State*, No. 10-17-00154-CR, 2018 Tex. App. LEXIS 10236, at *5 (Tex. App.—Waco Dec. 12, 2018, pet. ref'd) (mem. op., not designated for publication) (citation omitted).

Proof that a defendant is free under an instanter bond is *prima facie* proof of notice to appear. *Id.* (citations omitted). To constitute adequate proof, the bond must state whether the defendant is charged with a misdemeanor or felony and must set forth the time, place, and court where the defendant is required to appear. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 17.08 (West 2015)). Lack of actual notice is a "reasonable excuse" for a defendant's failure to appear and thus a defense to bail jumping. *Willis v. State*, 10-07-00375-CR, 2008 Tex. App. LEXIS 9665, at *2 (Tex. App.—Waco Dec. 23, 2008, pet. ref'd) (mem. op., not designated for publication).

Where, as here, because the date and time is not included in the bond, it did not provide *prima facie* proof of notice to appear. *Fish v. State*, 734 S.W.2d 741, 743-44 (Tex. App.—Dallas 1987, pet. ref'd). Thus, the State was required to produce evidence that Appellant had actual notice or that he engaged in a course of conduct designed to avoid receiving notice. *See Ferguson v. State*, 506 S.W.3d 113, 116 (Tex. App.—Texarkana 2016, no pet.). *See also Bell v. State*, 63 S.W.3d 529, 531-32 (Tex. App.—Texarkana 2001, pet. ref'd).

Through the testimony of several witnesses, the State established its case beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The trial court bailiff testified that during docket days, when a

5

defendant does not show, she then steps into the hallway and loudly calls the defendant's name three times. Appellant did not respond on March 21, 2016. The bailiff's testimony was supported by a *Certification of Call* memorializing her duties.

Testimony was also presented showing that the trial court's coordinator mailed a notice on February 29, 2016, to Appellant at the address he provided in his bond notifying him of the date and time to appear for his arraignment and the date and time to appear for a pretrial hearing—March 21, 2016, at 9:00 a.m., and April 18, 2016, at 9:00 a.m., respectively. A copy of the notice was emailed to Chapman Bail Bonds.[7]

The representative for the bond company testified that Appellant's name was on the docket for March 21, 2016. On March 16, 2016, she contacted him and advised him of the upcoming arraignment. He claimed he did not get a copy of the notice letter and she notified him that his case was "on the docket and that he needed to be there."

When Appellant failed to appear, the representative contacted his bond cosigner who was unaware of Appellant's whereabouts. The cosigner reported that Appellant was not answering his messages. Thereafter, the representative made three more attempts to contact Appellant, to no avail.

A deputy who investigated Appellant's failure to appear testified that on April 14, 2016, he went to the address provided on the bond form and interviewed Appellant's

---

[7] Due to computer issues, the Chapman Bail Bonds representative could not say with certainty that she received the email notice.

grandparents and Appellant's former girlfriend.[8]  The grandparents owned the house and Appellant's former girlfriend was living there at the time.  Neither Appellant's grandparents nor his former girlfriend knew Appellant's whereabouts.  According to the deputy, the grandparents and the former girlfriend informed him that Appellant was "jumping from place to place" and "staying under the radar, so to speak."

The deputy discovered that Appellant was receiving mail at that address provided but had not collected it.  One of the envelopes addressed to Appellant was from the 52nd District Court Administrator of Coryell County postmarked "02 MAR '16."

Appellant's grandparents and former girlfriend assisted the deputy in his investigation.  In 2017, based on a tip, Appellant was located in Travis County.  Local authorities were sent to an address to confirm his identity and to arrest him.  When asked during direct examination whether Appellant "was actively on the run from law enforcement," the deputy responded, "[b]ased on what was presented to us and the amount we had to go through, yes, ma'am."

Appellant's grandfather testified it was his "impression" that his grandson was on the run.  A redacted letter from Appellant to his grandfather dated May 3, 2017, was introduced into evidence.  In the letter, Appellant expressed "the bond jumping I'm not entirely sure about but seeing as how I was 'off the grid' we will see."

---

[8] The former girlfriend was the alleged victim of the underlying charge of assault family violence.

7

A psychologist who interviewed Appellant at the request of Appellant's attorney testified without objection that Appellant told him that he wanted to travel "like a hippy" and see different states in 2016. The psychologist's report, which was not objected to, demonstrated that Appellant knew he was in violation of the conditions of his bond. The unobjected-to evidence established beyond a reasonable doubt that Appellant had the required culpable mental state when he failed to appear for his pretrial hearing.

### ANALYSIS

By the *Anders* brief, counsel comprehensively evaluates the underlying proceedings, including *voir dire*, the sufficiency of the evidence, evidentiary rulings, the court's charges during the guilt-innocence phase and the punishment phase, and the imposition of a ten-year sentence. Counsel concludes the State satisfied its burden to establish beyond a reasonable doubt all the elements of the offense. *See Tucker*, 2018 Tex. App. LEXIS 10236, at *2-5. He candidly reviews an issue regarding the admission of an expert report regarding a psychological evaluation but concedes that absent a timely objection, any potential error was not preserved for review. *See* TEX. R. APP. P. 33.1(a). Counsel similarly assesses other potential issues, including the assessment of punishment, and concludes that errors, if any, were not preserved for appellate review.

When we have an *Anders* brief by counsel and a *pro se* response by an appellant, we have two choices. We may determine that the appeal is wholly frivolous and issue an opinion explaining that we have reviewed the record and find no reversible error; *Bledsoe v. State*, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005) (citing *Anders*, 386 U.S. at 744), or we may determine that arguable grounds for appeal exist and remand the cause to the

8

trial court so that new counsel may be appointed to brief issues.  *Id.*  (citing *Stafford v. State*, 813 S.W.2d 503, 510 (Tex. Crim. App. 1991)).

We too have independently examined the record to determine whether there are any non-frivolous issues which might support the appeal.  *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *In re Schulman*, 252 S.W.3d at 409; *Stafford*, 813 S.W.2d at 511.  We have found no such issues.  *See Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969).  After reviewing the record, counsel's brief, and Appellant's *pro se* responses, we agree with counsel's assessment that there is no plausible basis for reversal of Appellant's conviction.  *See Bledsoe*, 178 S.W.3d at 826-27.

### CONCLUSION

The trial court's judgment is affirmed and counsel's motion to withdraw is granted.


Patrick A. Pirtle
Justice


Do not publish.